Case 1:22-cr-00294-BAH Document 49 Filed 11/29/23 Page 1 of 13

✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

11:19 am, Nov 29 2023
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy



**U.S. Department of Justice**

*United States Attorney
District of Maryland
Northern Division*

| | | | |
|---|---|---|---|
| Michael Aubin<br>Assistant United States Attorney<br>Michael.Aubin@usdoj.gov | Mailing Address:<br>36 S. Charles Street, 4th Floor<br>Baltimore, MD 21201 | Office Location:<br>36 S. Charles Street, 4th Floor<br>Baltimore, MD 21201 | DIRECT: 410-209-4940<br>MAIN: 410-209-4800<br>FAX: 410-962-0716 |

October 3, 2023

Sedira Banan, Esq.
Office of the Federal Public Defender
100 S. Charles St.
Tower II, 9th Floor
Baltimore, MD 21201

      Re:   *United States v. Kevin Maurice Lawson*
             Criminal No. LKG-22-0294

Dear Counsel:

      This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Kevin Maurice Lawson (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by September 1, 2023, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense(s) of Conviction

      1.    The Defendant agrees to plead guilty to Count One of the Indictment, which charge(s) the Defendant with Armed Bank Robbery, in violation of 18 U.S.C. §§ 2113(a), (d) & (f). The Defendant admits that the Defendant is, in fact, guilty of the offense(s) and will so advise the Court.

### Elements of the Offense(s)

      2.    The elements of the offense(s) to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Indictment, in the District of Maryland:

      a. The defendant took U.S. Currency from the person and presence of bank employees while the U.S. Currency was in the care or custody of the bank;
      b. The defendant used force, violence, or intimidation to effectuate the taking;
      c. The defendant intentionally assaulted a person, or put in jeopardy the life of another person by the use of a dangerous weapon or device; and
      d. The deposits of the bank were then insured by the Federal Deposit Insurance Corporation.

Rev. August 2018

Penalties

3.  The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 2113(a), (d) & (f) | N/A | 25 years | 3 years | $250,000 | $100 |

a.  Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.  Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.  Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d.  Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e.  Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.  Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

    a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

    e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further

trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

      h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree to the following Sentencing Guidelines:

### Group 1 - Armed Bank Robbery - July 18, 2022

      a.      The applicable base offense level for Armed Bank Robbery is **twenty (20)** pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2B3.1(a).

      b.      Pursuant to U.S.S.G. § 2B3.1(b)(1) there is a **two (2)** level increase because the property of a financial institution was taken. **Subtotal: twenty-two (22)**.

      c.      Pursuant to U.S.S.G. § 2B3.1(b)(2)(A) there is a **seven (7)** level increase because a firearm was discharged. **Subtotal: twenty-nine (29)**.

      d.      Pursuant to U.S.S.G. § 2B3.1(b)(3)(A) there is a **two (2)** level increase because a bodily injury occurred. **Subtotal: thirty-one (31)**.

  e. Pursuant to U.S.S.G. § 2B3.1(b)(4)(B) there is a **two (2)** level increase because a person was physically restrained to facilitate commission of the offense or to facilitate escape. **Subtotal: thirty-three (33)**.

Group 2 - Armed Bank Robbery - June 6, 2022

  f. The applicable base offense level for Armed Bank Robbery is **twenty (20)** pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2B3.1(a).

  g. Pursuant to U.S.S.G. § 2B3.1(b)(1) there is a **two (2)** level increase because the property of a financial institution was taken. **Subtotal: twenty-two (22)**.

  h. Pursuant to U.S.S.G. § 2B3.1(b)(2)(E) there is a **three (3)** level increase because a dangerous weapon was brandished or possessed. **Subtotal: twenty-five (25)**.

Group 3 - Armed Bank Robbery - June 27, 2022

  i. The applicable base offense level for Armed Bank Robbery is **twenty (20)** pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2B3.1(a).

  j. Pursuant to U.S.S.G. § 2B3.1(b)(1) there is a **two (2)** level increase because the property of a financial institution was taken. **Subtotal: twenty-two (22)**.

  k. Pursuant to U.S.S.G. § 2B3.1(b)(2)(E) there is a **three (3)** level increase because a dangerous weapon was brandished or possessed. **Subtotal: twenty-five (25)**.

Grouping

  l. There is one group with the highest offense level of thirty-three (33) (Group One for a total of one (1) unit), and two groups from 5 to 8 levels less serious (Groups Two (25) and Three (25), for a half (0.5) unit each, totaling one (1) unit). Accordingly, pursuant to U.S.S.G. § 3D1.4 there is a two (2) unit increase, thus adding two (2) levels to the highest offense level. **Subtotal: thirty-five (35)**.

  m. This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1**-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal

conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

      **n.**      **Anticipated Adjusted Offense Level = thirty-two (32)**

    7.    There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

    8.    Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

    9.    At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

    10.    In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

      a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

      b.    The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

  c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Forfeiture

11. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

12. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

13. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

14. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Restitution

15. The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses, which the parties stipulate is at least $19,970.00. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior

disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

### Defendant's Conduct Prior to Sentencing and Breach

16. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

17. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

18. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

19. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

_____
Michael F. Aubin
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

11-21-23
Date

Kevin Maurice Lawson

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

11-21-23
Date

Sedira Banan, Esq.

Rev. August 2018

9

## ATTACHMENT A

### STIPULATION OF FACTS

*The undersigned parties stipulate and agree that the following facts are true and accurate, and that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Kevin Maurice Lawson ("Lawson") is 55 years old, and is a resident of Baltimore, Maryland.

Lawson committed armed bank robberies in Baltimore, Maryland on June 6, 2022, June 27, 2022, and July 18, 2022, utilizing a black air gun. In the first two instances, Lawson forced employees to accompany him as he ordered others to provide him U.S. Currency. In the third instance, Lawson rushed a security guard, and repeatedly struck her on her head and other parts of her body with his weapon as he ordered bank employees to provide him U.S. Currency. In total, Lawson robbed the banks of $19,970.00.

On Monday, June 6, 2022, at approximately 9:45 A.M., Lawson committed a robbery of the Truist Bank located at 120 East Baltimore Street, Baltimore, Maryland 21202, a federally insured financial institution. Lawson entered wearing a blue baseball cap, black-framed prescription glasses, a surgical mask, plastic food service-type gloves, a loose-fitting dark-colored long sleeve shirt, blue jeans, and gray shoes. Lawson approached a bank employee seated at his desk on the banking floor and displayed what appeared to be a dark semiautomatic handgun in his waistband. Lawson ordered the employee up from his chair, directed him to the teller line, and physically moved the employee toward a teller station. Lawson held the employee against the teller glass and demanded money from the victim teller behind the teller line. The victim teller passed U.S. currency to Lawson, who placed the money in a brown paper bag contained within a white plastic bag, and fled the bank on foot. Upon exiting the bank, Lawson discarded outer clothing, revealing a dark-colored t-shirt and black shorts with white trim. Lawson continued, however, to wear his cap and mask. Lawson made away with $12,280.00.

On Monday, June 27, 2022, at approximately 11:18 A.M, Lawson committed a robbery of the Truist Bank located at 5439 Harford Road, Baltimore, Maryland 21214, a federally insured financial institution. Lawson entered wearing a gray knit cap, black-framed prescription glasses, a surgical mask, purple latex gloves, a loose-fitting gray long sleeve shirt, and dark-colored pants. Lawson approached a bank employee seated at his desk on the banking floor and displayed what appeared to be a dark semiautomatic handgun in his waistband. Lawson ordered the employee up from his chair and directed him to the teller line. Lawson approached a second bank employee seated on the banking floor, displayed the handgun on his waistband, and ordered her to the teller line. Lawson ordered the first bank employee to demand cash from the victim teller behind the teller line. The victim teller passed U.S. currency to the first employee who placed the money on the counter. Lawson placed the money in a brown paper bag contained within a white plastic bag, and ordered the first bank employee to unlock a side door leading to Hamilton Avenue. The

employee complied and Lawson fled on foot eastbound on Hamilton Avenue. Lawson exited the bank and, and removed his outer long-sleeve gray shirt, revealing a dark-colored t-shirt with lettering on the back. Lawson continued south, parallel to Harford Road using the alley and parking lots, and continued to wear the same hat and mask worn during the robbery. Lawson made away with $2,255.00.

On Monday, July 18, 2022, at approximately 1:29 P.M., Lawson committed a robbery of the Wells Fargo Bank located 3200 West North Avenue, Baltimore, Maryland 21216, a federally insured financial institution. Lawson entered wearing a gray knit cap, black-framed prescription glasses, a surgical mask, partially torn light-colored plastic gloves, a loose-fitting gray long sleeve shirt, and dark-colored pants. Lawson immediately brandished what appeared to be a black semiautomatic handgun and forced it against the body of the armed security guard in the bank lobby. Lawson pushed the guard into center of the bank lobby and tried to disarm her by grabbing her holstered duty firearm. The guard fought Lawson, and they went to the floor struggling for the guard's gun. Lawson ordered the guard to give up her gun and demanded cash. They continued to struggle on the floor. Lawson repeatedly struck the guard in the head with his weapon and slammed the guard into the floor. Lawson told the guard, "I'm going to kill you, bitch," and said something about money.

Bank employees behind the teller line, fearing for the safety of the security guard and their own safety, passed U.S. currency through the teller line barrier glass and called to Lawson. Lawson disengaged from the guard and went to the counter to get the money. The guard recovered from the ground and fired rounds from her duty weapon at Lawson before the weapon jammed. Lawson took the money from the counter and fled the scene. Lawson made away with $5,435.00.

Lawson departed the area in a gray 2018 Kia Sportage bearing Maryland license plate 5EJ 2462. Baltimore Police Department ("BPD") patrol units located the vehicle and attempted to initiate a stop, but Lawson fled. Officers briefly lost view of the vehicle before locating it crashed into the exterior wall of a vacant rowhome, located at 2734 Prospect Street, Baltimore, Maryland, and abandoned. The airbag deployed as a result of the crash.

The BPD Mobile Crime Lab responded to process the bank robbery scene and recovered a finger portion of a white latex glove, a black air gun, and a brown paper bag inside of a white plastic bag. These items were recovered on the floor of the bank, consistent with where Lawson and guard struggled on the floor. The bank robbery scene, and several items contained therein were swabbed for DNA.

The BPD Mobile Crime Lab and members of the BPD and the Federal Bureau of Investigation ("FBI") Baltimore Violent Crimes Task Force processed and searched the aforementioned Kia and located clothing identical to the clothing used in the robbery in the vehicle, including a gray knit cap, torn white latex gloves, a long sleeve gray shirt, and black-framed prescription glasses. The gray long sleeve shirt and gray knit cap were consistent in appearance with Lawson's attire in the June 27, 2022, Truist Bank robbery. A purple latex glove was located in the vehicle, consistent with the purple latex gloves worn by Lawson in the June 27, 2022, Truist Bank robbery.

Documents were located in the vehicle, to include a form SS-5 Application for a Social Security Card with handwritten blue ink documenting Kevin Maurice Lawson, date of birth: August 27, 1968, mailing address: 1106 North Dukeland Street, Baltimore, Maryland 21216. 1106 North Dukeland Street, Baltimore, Maryland is approximately two blocks away from where the bank robbery getaway car was located crashed and abandoned minutes after BPD attempted to initiate the car stop.

A black backpack was located in the front passenger area of the Kia containing a U.S. Department of Justice Federal Bureau of Prisons ("BOP") Inmate Identification Card with the name Kevin Lawson, Number 41004-37, a VISA debit card with the name Kevin Lawson, a letter from Baltimore City Office of Child Support to Kevin Lawson, dated June 30, 2022, and a letter from Bolder Outreach Solutions to Kevin M. Lawson, dated July 7, 2022. The vehicle, and several items contained therein were swabbed for DNA.

A Maryland Motor Vehicle Administration Certificate of Title for a different vehicle and other vehicle-related documents were also located inside the Kia and to a female subject. Investigators reviewed social media accounts of the female subject and identified publicly available posts. A post, dated July 15, 2022, depicted the female subject with Lawson, who was wearing prescription eyeglasses. The text accompanying the picture read, "Kevin Lawson."

At the time of all three robberies, Lawson was in the custody of the BOP in a residential reentry program serving the remainder of a federal sentence. On July 19, 2022, investigators contacted the United States Probation Office, Baltimore, Maryland, who advised that Lawson was assigned to home confinement with authorized release to work between the hours of 7:00 A.M. and 4:00 P.M.

On July 22, 2022, Lawson was arrested at the residential reentry program pursuant to a federal arrest warrant in connection with the aforementioned crimes. Incident to that arrest, investigators located a pair gray New Balance brand shoes worn during the robberies committed on June 6, 2022, and July 18, 2022, and a pair of black with white sole Fila brand shoes used during the June 28, 2022 robbery. Lawson was subsequently swabbed for his DNA.

On January 6, 2023, the FBI Laboratory produced a report of the analysis of the DNA swabs taken from the bank and getaway vehicle used during the July 18, 2022 robbery. The analysis indicated a very strong level of support for the inclusion of Lawson as a potential contributor of DNA for several samples, including glasses, finger webbing of the latex gloves, a shirt, a hat, and blood located on the airbag, all located in the getaway vehicle.

Throughout the course of the investigation, investigators learned that Lawson previously robbed the bank located at 3200 West North Avenue, Baltimore, Maryland 21216 on July 3, 2003, and August 4, 2003. The bank was not a Wells Fargo Bank in 2003, however the Wells Fargo robbed on July 18, 2022, now occupies that address. Lawson further robbed the bank located at 5439 Harford Road, Baltimore, Maryland on September 29, 2003. The bank was not a Truist Bank in 2003, however the Truist Bank robbed on June 27, 2022, now occupies that address.

SO STIPULATED:

_____
Michael F. Aubin
Assistant United States Attorney

_____  11-21-23
Kevin Maurice Lawson
Defendant

_____  11-21-23
Sedira Banan, Esq.
Counsel for Defendant